UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:                                          )
                                                )
VISUAL HEALTH SOLUTIONS, INC.                   )
EIN: 84-1525504                                 )    Case No. 17-18643-EEB
                                                )
Debtor.                                         )

## DECLARATION OF PAUL BAKER IN SUPPORT OF FIRST DAY MOTION

I, Paul Baker, hereby state under penalty of perjury:

*The Debtor*

1. Visual Heath Solutions, Inc. ("VHS" or "Debtor") is owned by a number of investors. Two companies, VP, LLC and VP2, LLC, own about 95% of the interests in VHS. I hold 33.213% of the interests in VP, LLC and 21.24584% of VP2, LLC. I am the President and Chief Executive Officer of VHS and manage the day to day operations of VHS.

2. The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on September 18, 2017 (the "Petition Date").

3. The Debtor continues in possession of its property and is operating and managing its businesses, as debtor-in-possession, pursuant to Bankruptcy Code §§ 1107 and 1108.

4. VHS creates medical based multimedia content, including medical animations, medical illustrations, and interactive graphics through a collaborative process with VHS and its clients. VHS's experience with a wide range of clients includes creation of medical multimedia owned by customers, modification of our existing library of medical animations and multimedia content, licensing content from VHS' animation library, and integration of unique patient point-of-care and lifestyle modification applications. VHS' web address is www.visualhealthsolutions.com.

5. The asset value of VHS is substantially less than the secured loans encumbering the assets. In addition, the Debtor has been sued by both of its secured creditors, who are pursuing replevin actions. At least one other creditor has commenced a collection action against VHS. These events were the primary cause the of VHS' bankruptcy filing.

*Cash Collateral*

6. VHS maintains two secured loans which liens arising therefrom could encumber the Debtor's "cash collateral" as the term is defined in Bankruptcy Code § 363. The two liens are generally described as follows:

   a. The Debtor entered into a secured loan with Colorado Business Bank. ("CBB") on or around June 27, 2014, which loan is guaranteed by the Small Business Administration. CBB filed with the Colorado Secretary of State, a UCC-1 on July 2, 2014, in which CBB asserts a lien on substantially all of VHS' assets.

   b. VHS entered into a secured loan with Family Restaurants, Inc. ("FRI," and together with CBB, the "Secured Creditors") on or around December 31, 2014. FRI refiled with the Colorado Secretary of State, a UCC-1 on June 16, 2016, after subordinating its claim to CBB, in which FRI asserts a lien in all intellectual property and proceeds therefrom.

7. The amount owing to CBB, pursuant to CBB's state court complaint, is approximately $1,107,065. The amount owing to FRI, pursuant to FRI's state court complaint, is approximately $1,295,029.

8. VHS' total asset value as of the Petition Date is approximately $300,000. The Debtor's accounts receivable as of the Petition Date is approximately $87,644. The Debtor's cash on hand and in bank accounts as of the Petition Date is approximately $0.

9. The Debtor is replacing its accounts receivable and cash in the ordinary course of its operations. The value of the Debtor's assets increase as the Debtor's library of medical media is utilized and grows.

10. The Debtor plans to continue operation of its business throughout the Chapter 11 case and propose a Plan of Reorganization which provides for the continuation of the Debtor's business.

11. In order to pay necessary operating expenses, the Debtor must immediately use cash collateral in which Secured Creditors may have an interest.

12. The Debtor has attached as Exhibit A to the Motion to Use Cash Collateral a budget. The budget reflects a conservative analysis of the Debtor's income and expenses over the projected six month period.

13. The majority of the Debtor's revenues and available cash are derived from the sale and licensing of its intellectual property. Without the use of cash collateral, the Debtor will have insufficient funding for business operations. Therefore, the Debtor's use of cash collateral during the interim period is necessary to avoid immediate and irreparable harm to the estate. With the use of cash collateral, the Debtor will not be able to pay employees to develop the intellectual property and meet contractual obligations, pay rent, and market its products associated with operating the business.

14. The Debtor will be replacing its accounts receivable, cash, and cash equivalents in the course of its daily operations and therefore the collateral base will remain stable and will improve over time. The Debtor's cash position is projected to be positive after meeting expenses over the budgeted period.

*Employment of Bankruptcy Counsel*

15. Immediate retention of bankruptcy counsel is necessary to address the immediate issues in this case, including address cash collateral issues and assisting VHS in meeting its obligations as a debtor in possession.

*Conclusion*

16. The preceding statements are true and correct to the best of our knowledge and belief.

*[signature]*
Paul Baker, CEO

Subscribed and sworn to before me this 18th day of September, 2017 at Denver, Colorado.

Witness my hand and official seal.

My commission expires: 2-25-21   *[signature]*
Notary Public

```
CELINA WORLEY
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20134011915
MY COMMISSION EXPIRES FEBRUARY 25, 2021
```